**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JOHN PECK,                                 *

    Plaintiff,                        *

    v.                                      *       Civil Action No. 8:21-cv-03310-PX

MALINI SABA, *et al.*,                     *

    Defendants.                       *
                         ***

## <u>MEMORANDUM OPINION</u>

Pending before the Court is the motion to dismiss filed by Defendants Rena McDonald and McDonald Law Group, LLC (together the "McDonald Defendants") and the motion to transfer or dismiss filed by Defendants Malini Saba and Akaddian, Inc. (together the "Saba Defendants"). ECF Nos. 17 & 28. The motions are fully briefed and no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the reasons discussed below, the motion to transfer is GRANTED and the matter is transferred to the United States District Court for the District of Nevada. The Court defers ruling of the McDonald Defendants' motion so that it may be resolved by the transferee court.

### I.    Background

Plaintiff John Peck ("Peck") accuses Defendant Malini Saba of fraudulently persuading him to purchase stock in Defendant Akaddian, a Nevada-based corporation. ECF No. 9-2 ¶ 15.[1] Specifically, Saba falsely represented herself as a "self-made billionaire businesswoman" who had "successfully launched 26 start-up companies," and provided Peck a false and misleading PowerPoint presentation and company financial statement. *Id.* ¶¶ 32 – 36. Peck maintains that Saba induced him to enter into a Preferred Stock Purchase Agreement ("The Agreement") where

---

[1] The Amended Complaint does not specify the nature of Akaddian's business.

he transferred $300,000 in exchange for allegedly worthless Akaddian stock.  *Id.* ¶¶ 15 – 16, 20; *see also* ECF Nos. 18-3 & 28-2.

On December 29, 2021, Peck initially sued only Saba and Akaddian for violations of Section 10(b) of the Securities Exchange Act of 1934 and the accompanying Rule 10b-5, 15 U.S.C. § 78j(b) & 17 C.F.R. § 240.10b-5; the Civil RICO statute, 18 U.S.C. §§ 1962 & 1964; and the Maryland Securities Act, Md. Code Ann., Corps. & Assn's §§ 11-301 & 11-703; as well as a common law unjust enrichment claim.  *See generally* ECF No. 1.  Next, Peck moved for Clerk's entry of default, although he had not yet perfected service of process.  ECF No. 3.  The Court denied that motion and ordered that Peck show cause as to why the Complaint should not be dismissed for failure to perfect service.  ECF No. 4.

Instead of responding directly to the show cause order, Peck attempted to amend his Complaint on three separate occasions.  ECF Nos. 5, 7, & 9.  The first time, the Clerk rejected the filing because Peck had failed to move for leave to file the proposed amended complaint. ECF No. 6.  On the second attempt, the Clerk rejected the pleading for reasons not altogether clear from the docket.  ECF Nos. 7 & 8.  The third time, Peck filed the proposed amended complaint together with a motion for leave that had not been properly docketed.  ECF No. 9. The proposed amended complaint was near identical to the original pleading, but added the McDonald Defendants, broadly averring that they participated in the "investment scam" as counsel to the Saba Defendants.  ECF No. 9-2 ¶¶ 8, 14, 23.

Before the Court could rule on Peck's motion for leave to amend the complaint, Peck filed questionable proof of service (ECF No. 11), and another motion for Clerk's entry of default against all Defendants.  ECF No. 13.  The McDonald Defendants also separately moved to dismiss the yet-to-be-accepted amended complaint for lack of personal jurisdiction and on

sufficiency grounds.  ECF No. 17.

On October 11, 2022, the Court held a recorded telephone conference to address the outstanding motions.  The Court denied Peck's motion for Clerk's entry of default (ECF No. 25), citing principally the swift and complete participation of all Defendants in the action and the Court's mandate to resolve cases on the merits, where possible.  *Cf. Xerox Corp. v. Kidd Int'l Home Care, Inc.*, No. 8:21-cv-1058-PX, 2021 WL 4641558, at *2 (D. Md. Oct. 7, 2021).  The Court also granted Peck's motion for leave to amend, accepting the proposed amended complaint at ECF No. 9-2 as the operative one.  ECF No. 24.  In doing so, the Court made plain to the parties that it granted the motion for leave solely to clear up the confusion on the docket.  The Court did not pass on the legal sufficiency of the claims.

Last, the Court clarified that the McDonald Defendants' earlier motion to dismiss would remain pending, and set a briefing schedule for the Saba Defendants to move for dismissal or transfer, which they timely filed.  *See generally* ECF No. 28.  Peck has responded to the motions. The Court now turns to the propriety of transfer.

## II.      Saba Defendants' Motion to Transfer

The Saba Defendants move to transfer the case to the United States District Court for the District of Nevada, relying principally on the forum-selection clause in the Agreement.  ECF No. 28-1 at 3.  The clause states:

> Each of the parties hereto hereby (I) irrevocably submits to the exclusive jurisdiction of any court located in the state of Nevada for the purposes of any suit, action or other proceeding arising out of this agreement; (II) irrevocably and unconditionally waives (and agrees not to plead or claim) any objection to the laying of venue of any action, suit or proceeding arising out of this agreement in any state or federal court located in the state of Nevada, or that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.

> ECF No. 28-2 ¶ 7 (paragraph all capitalized in original document).

3

The Saba Defendants' motion to transfer is governed by 28 U.S.C. § 1404, which provides that a court "may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a).  This Court retains broad discretion to transfer a matter pursuant to Section 1404, undertaking "an individualized, case-by-case consideration of convenience and fairness." *United States ex rel. Salomon v. Wolff*, 268 F. Supp. 3d 770, 774 (D. Md. 2017) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).  The Court must first determine whether the action could have been brought in the requested district. *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 – 70 (D. Md. 2008).  Next, the Court customarily considers several non-exclusive factors such as "(1) the weight accorded the plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002).

Generally, the plaintiff's choice of venue is accorded special consideration such that "[u]nless the balance of the factors 'is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *CareFirst, Inc. v. Taylor*, 235 F. Supp. 3d 724, 733 (D. Md. 2017) (quoting *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984)).  However, where parties in advance of litigation "have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause[.]" *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. Of Tex.*, 571 U.S. 49, 62 (2013).[2]  Thus, absent extraordinary circumstances, "a valid forum-selection clause [should be] given controlling weight." *Id.* at 63.

In deciding whether to enforce a forum-selection clause, the Court must determine first

---

[2] Although the Agreement's choice-of-law provision requires application of Nevada law (ECF No. 28-2 ¶ 7),  the propriety of venue pursuant to a forum-selection clause "is a procedural matter governed by federal law." *See Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010).

whether the clause is "mandatory" and next whether "the claims fall within the scope of the forum-selection clause." *Brown v. Emery Fed. Credit Union*, No. DLB-21-591, 2022 WL 991387, at *3 (D. Md. Mar. 31, 2022) (internal citations omitted).  If the answer to both questions is yes, then the forum-selection clause is presumptively enforceable and transfer must be granted absent a showing that transfer would be "unreasonable." *Id.*; *see also J. v. Genuine Title, LLC*, No. RDB-13-0081, 2015 WL 8315704, at *13 (D. Md. Dec. 9, 2015).  The party opposing transfer bears a "heavy burden of demonstrating unreasonableness." *See TECH USA, Inc. v. Evans*, 592 F. Supp. 2d 852, 859 (D. Md. 2009) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).  To sustain that burden, the party must demonstrate that he was fraudulently induced to agree to the clause; that the selected forum is gravely inconvenient or deprives the complaining party of his ability to gain relief; or that enforcement is against public policy.  *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996); *see also CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 772 (D. Md. 2009).

Peck does not dispute that his claims could have been brought in Nevada.  Peck also concedes that the forum-selection clause is mandatory and reaches all claims in the Amended Complaint.  ECF No. 29-1 at 7.  From this, the Court easily concludes that the forum-selection clause is presumptively enforceable and will grant transfer unless Peck can carry the "heavy burden" of demonstrating unreasonableness.

Peck first argues that the forum-selection clause is "void" because Saba tricked Peck into signing the Agreement to purchase Akaddian stock.  ECF No. 29-1 at 2-4.  But the mere allegation that Defendants have committed securities fraud does not establish that the forum-selection clause itself had been procured by fraud.  *See, e.g.*, *Allen*, 94 F.3d at 929.  Indeed, "[f]raud and overreaching must be specific to a forum selection clause in order to invalidate it."

*Brooks-Williams v. Keybanks, Nat'l Assoc.*, No. WDQ-15-559, 2015 WL 9255327, at \*6 n.21 (Dec. 17, 2015) (quoting *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997)); *see also Pulse Med. Instruments, Inc. v. Drug Impairment Detection Servs., LLC*, No. DKC 09-0921, 2009 WL 4062095, at \*2 (D. Md. Nov. 20, 2009) ("Plaintiff contends that the entire Agreement was procured through fraud and misrepresentation, but does not argue that the forum selection clause specifically was induced by fraud. That is not enough.").  Otherwise, the mere allegation of fraudulent inducement would defeat the parties' agreement on the proper forum for litigation—an outcome that "would render the clause virtually meaningless" based solely on the nature of the allegation.  *See Belfiore v. Summit Fed. Credit Union*, 452 F. Supp. 2d 629, 632 n.4 (D. Md. 2006).

    Peck next asserts that the clause should be invalidated as contravening public policy. Peck more particularly argues that Maryland maintains a comparatively stronger interest "in protecting its residents from investing in stocks due to false statements and misrepresentations," citing the anti-fraud and civil liability provisions in the Maryland Securities Act.  ECF No. 29-1 at 4 – 5.  Thus, says Peck, "Maryland has a far greater interest in protecting Maryland investors than does Nevada."  *Id.* at 5.

    It is well-established that the "availability of comparable, albeit different, legislation in different states demonstrates that protection under the [statute] is unnecessary where there is a substitute[.]"  *James v. Seed Consulting, LLC*, No. RDB-20-0371, 2020 WL 1974766, at \*4 (D. Md. Apr. 24, 2020) (quoting *Kunda v. C.R. Bard, Inc.*, 671 F.3d 464, 469 (4th Cir. 2011)).  It is further plain that Nevada statutes comparably punish securities fraud and create civil causes of action.  *Compare* Md. Code Ann., Corps. & Assn's §§ 11-301 & 11-703, *with* Nev. Rev. Stat. §§ 90.570 & 90.660.  Peck has simply failed to demonstrate that Maryland's interest in enforcing

securities laws so far outweighs Nevada's that enforcing the forum-selection clause would contravene public policy.  *See Allen*, 94 F.3d at 928 – 30.  Thus, the Court concludes that Peck has failed to sustain his burden of demonstrating that the clause is unenforceable.  The Saba Defendants' motion to transfer is granted.

### III.    The McDonald Defendants

Although the McDonald Defendants are not signatories to the Agreement, the Court easily concludes that their claims, too, should be transferred.  Where the alleged misconduct of a defendant who is not a party to the contract is "closely related" to the contractual relationship, the Court generally extends the forum-selection clause to that defendant.  *Belfiore*, 452 F. Supp. 2d at 633 (citing *Manetti-Farrow, Inc. v. Gucci Am. Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) (forum-selection clause applies to non-parties because "the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants"));  *cf. TECH USA, Inc.*, 592 F. Supp. 2d at 858.  According to the Amended Complaint, the McDonald Defendants had conspired with the Saba Defendants to engage in the claimed fraud by, in part, drafting the Agreement and other materials.  ECF No. 9-2 ¶¶ 8, 14. The McDonald Defendants drafting the very instrument that includes the forum-selection clause supports transfer of the claims against them.

Likewise, under traditional forum-selection analysis, the Court finds that transfer of the claims against the McDonald Defendants is warranted.  Although the plaintiff's choice of forum is accorded significant weight, the remaining factors strongly favor transfer.  It is undisputed that the McDonald Defendants are Nevada residents who practice law from their offices in Nevada. *See* ECF Nos. 9-2 ¶ 8 & 17-1 at 8.  Further, the Amended Complaint avers that the McDonald Defendants engaged in the alleged conspiracy by acting as counsel to the Saba Defendants.  ECF

No. 9-2 ¶¶ 8, 23.  Thus, as to the McDonald Defendants, Nevada is a far more convenient and equitable forum, especially given that the remainder of the case will be transferred pursuant to a valid and enforceable forum-selection clause.

### IV.  Conclusion

For the foregoing reasons, the Saba Defendants' motion to transfer (ECF No. 28) is GRANTED, and this case shall be TRANSFERRED to the United States District Court for the District of Nevada.  A separate Order follows.


November 29, 2022

Date

/s/

Paula Xinis
United States District Judge